

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

ROBERT JOHNSON,                )
                                                    )
          Plaintiff,                            )
                                                    )
v.                                                )   Case No. 2:26-cv-25
                                                    )   Corker/Wyrick
DIEBOLD NIXDORF, INC.,      )
                                                    )
          Defendant.                        )

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1. This is an action arising under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq.

2. Plaintiff alleges that Defendant interfered with his rights under the FMLA, retaliated against him for exercising protected rights, failed to reasonably accommodate his disability under the ADA, and subjected him to retaliatory treatment that culminated in a constructive discharge.

3. Plaintiff seeks damages for lost wages, emotional distress, liquidated damages under the FMLA, equitable relief, and any other relief the Court deems just and proper.

4. Plaintiff demands a jury trial.

### II. JURISDICTION AND VENUE

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, including the ADA and FMLA.

1

6. Venue is proper in the Eastern District of Tennessee pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this district, and Plaintiff was employed in Tennessee in a fully remote capacity.

7. Defendant is authorized to do business in Tennessee and maintains a registered agent for service of process at Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

### III. PARTIES

8. Plaintiff Robert Johnson is a resident of Sullivan County, Tennessee.

9. At all relevant times, Plaintiff was employed by Defendant as Manager, Information Security, a fully remote position based in Tennessee.

10. Defendant Diebold Nixdorf, Inc. is a foreign for-profit corporation organized under the laws of Ohio and doing business in Tennessee.

11. Plaintiff alleges, on information and belief, that at all relevant times Defendant employed more than 50 employees within a 75-mile radius of Plaintiff's work location for purposes of the FMLA, and at least 15 employees nationwide for purposes of the ADA.

### IV. FACTUAL BACKGROUND

**A. Employment and Performance**

12. Plaintiff began employment with Defendant on January 16, 2023, as Manager, Information Security, earning a base salary of $120,000 per year, plus eligibility for an annual bonus of up to 10%.

13. Throughout his employment, Plaintiff consistently worked approximately 55 hours per week, which equates to more than 1,430 hours in the relevant 12-month period, more than satisfying the FMLA's 1,250-hour requirement excluding time on leave.

14. Plaintiff's role involved managing security operations, compliance initiatives, and risk mitigation efforts for Defendant's enterprise environment.

15. Plaintiff's work was fully remote from Sullivan County, Tennessee throughout his employment.

**B. First Medical Leave (July 2023 – January 2024)**

16. On July 12, 2023, Plaintiff began a medical leave due to a serious health condition.

17. During this leave, Plaintiff repeatedly received communications from his supervisor, Brian Cherry, which Plaintiff reasonably perceived as pressure to remain engaged in work matters despite being on medical leave.

18. Plaintiff understood these communications as discouraging the full use of medical leave and created pressure that interfered with Plaintiff's ability to fully rest and recover during leave.

19. Plaintiff returned from his first leave on January 11, 2024, with medical clearance to work.

**C. Protected Complaint to HR (November 15, 2023)**

20. On November 15, 2023, while still on leave, Plaintiff lodged a written complaint to management and Human Resources regarding what he reasonably believed to be harassment and interference with his protected leave.

21. Within approximately ten minutes, Plaintiff received a response from Scott Barronton stating that Plaintiff was "mistaken" in his interpretation of Mr. Cherry's communications.

22. Plaintiff received no substantive response from HR representatives Heather Eby or Jonathan Stark, despite repeated attempts to engage.

23. After this complaint, Plaintiff perceived a marked shift in Defendant's treatment toward him, including diminished responsiveness and increased pressure.

**D. Return to Work and Request for Accommodation**

24. Between January 11, 2024 and February 15, 2024, upon returning from leave, Plaintiff experienced an overwhelming workload that exacerbated his medical condition.

25. On multiple occasions during this period, Plaintiff requested workload accommodations from Mr. Cherry, explaining that he was struggling after an extended medical absence.

26. Mr. Cherry responded that Plaintiff simply "needed to be able to do the work," and did not meaningfully engage in an interactive process regarding accommodation.

27. Plaintiff documented these interactions in a contemporaneous "Daily Tasks" log stored on his work computer.

**E. Second Leave Request and FMLA Denial**

28. On February 15, 2024, Plaintiff notified Defendant via email that, on his doctors' recommendation, he required a second medical leave due to worsening health conditions.

29. In that email, Plaintiff expressed willingness to discuss the situation further and requested dialogue, but received no response from Defendant.

30. On February 21, 2024, Lincoln Financial, Defendant's third-party leave administrator, issued a written denial of Plaintiff's FMLA request, stating that Plaintiff had not met the 1,250-hour requirement.

31. Plaintiff disputes this determination and maintains that, based on his actual hours worked (approximately 55 per week), he met the statutory threshold.

32. Regardless of FMLA eligibility, Defendant was obligated under the ADA to engage in a good-faith interactive process and consider reasonable accommodations.

**F. Job Posting During Leave**

33. On or about March 15, 2024, while Plaintiff was still on medical leave and in the process of seeking accommodation, Defendant posted Plaintiff's position externally.

34. Posting the job while Plaintiff was on leave and seeking accommodation created a reasonable belief that Defendant intended to replace him rather than facilitate his return or temporarily backfill his role, particularly because Defendant did not communicate any plan for his return.

35. This action chilled Plaintiff's exercise of protected rights and signaled retaliation.

**G. Return to Work and Continued Hostility**

36. On April 29, 2024, Plaintiff was medically cleared to return to work.

37. Upon return, Plaintiff continued to face an excessive workload and lack of managerial support.

38. Defendant did not separate Plaintiff from Mr. Cherry or otherwise address Plaintiff's prior complaints.

39. On May 4, 2024, Plaintiff again raised concerns to HR regarding retaliation and lack of accommodation.

40. Defendant did not meaningfully investigate or remedy these concerns.

**H. Constructive Discharge**

41. On May 7, 2024, Plaintiff resigned from his position.

42. Defendant refused to separate Plaintiff from the supervisor whose conduct precipitated his complaints, failed to investigate his concerns, and signaled through the job posting that his position was effectively unavailable.

43. Plaintiff's resignation was not voluntary; rather, it was the foreseeable result of persistent pressure following protected leave, failure to accommodate his medical needs, the posting of his position during leave, retaliatory treatment after protected complaints, and working conditions so intolerable that a reasonable person would have felt compelled to resign.

44. On or about May 22, 2024, Plaintiff learned that Defendant had provided adverse information in response to his unemployment claim.

## I. EEOC Charge and Right to Sue

45. On June 12, 2024, Plaintiff timely filed a Charge of Discrimination with the EEOC alleging ADA and FMLA violations.

46. On January 27, 2026, the EEOC issued a Dismissal and Right-to-Sue Notice.

47. Plaintiff files this action within 90 days of receiving the Right-to-Sue letter.

48. Plaintiff has therefore exhausted all administrative remedies and his federal claims are reasonably related to and grow out of the allegations in his EEOC charge.

## V. CAUSES OF ACTION

### COUNT I – ADA DISCRIMINATION/FAILURE TO ACCOMMODATE

49. Defendant is a covered employer under the ADA.

50. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

51. Plaintiff's medical condition substantially limited major life activities, including his ability to concentrate, manage stress, and perform sustained work without medical destabilization.

52. Defendant knew of Plaintiff's medical condition and its impact on his ability to manage an excessive workload after a prolonged leave.

53. Plaintiff requested reasonable accommodation in the form of workload adjustment and support.

54. Plaintiff's requests for workload adjustments were tied directly to the medical impacts of his condition and therefore constituted protected requests for reasonable accommodation.

55. Defendant failed to engage in a good-faith interactive process and failed to provide reasonable accommodation.

56. Defendant's actions violated 42 U.S.C. § 12112.

## COUNT II – FMLA INTERFERENCE

57. Plaintiff was an eligible employee under the FMLA based on his hours worked.

58. Defendant interfered with Plaintiff's rights by pressuring him during medical leave, discouraging the use of leave, and denying FMLA protection based on an erroneous hours calculation.

59. These actions violated 29 U.S.C. § 2615(a)(1).

## COUNT III – FMLA RETALIATION

60. Plaintiff engaged in protected activity by requesting and taking medical leave.

61. Defendant took adverse actions against Plaintiff, including posting his job while on leave and subjecting him to increased pressure upon return.

62. Defendant's adverse actions began only after Plaintiff engaged in protected leave and complaints, demonstrating a causal connection.

63. There is a close temporal relationship between Plaintiff's protected activity and Defendant's adverse actions.

7

64. Defendant's conduct violated 29 U.S.C. § 2615(a)(2).

## COUNT IV – ADA RETALIATION

65. Plaintiff engaged in protected activity by requesting accommodation and complaining about discrimination.

66. Defendant retaliated by ignoring his complaints, failing to investigate, and subjecting him to hostile conditions.

67. This conduct violated 42 U.S.C. § 12203.

## COUNT V – CONSTRUCTIVE DISCHARGE

68. Defendant created working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

69. This constructive discharge was the foreseeable result of Defendant's discriminatory and retaliatory conduct.

## VI. DAMAGES

70. Back pay and lost benefits.

71. Front pay or reinstatement.

72. Emotional distress damages.

73. Liquidated damages under the FMLA.

74. Costs and allowable litigation expenses.

75. Injunctive relief requiring Defendant to adopt appropriate policies and training.

76. Any other relief deemed just and proper.

## VII. JURY DEMAND

77. Plaintiff demands trial by jury on all issues so triable.

WHEREFORE, Plaintiff respectfully requests relief as set forth herein.

Respectfully submitted,

Dated: __February 4, 2026__

Robert Johnson, Pro Se

2509 Overlook Road
Kingsport, TN 37686
(239) 270-4066
rcjparalegal@gmail.com

9

Case 2:26-cv-00025-DCLC-CRW    Document 1    Filed 02/04/26    Page 9 of 9    PageID #: 9